IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


WYNONA DENISE SMITH                                                        PLAINTIFF


v.                              NO. 4:10CV00716 HDY


MICHAEL J. ASTRUE,                                                        DEFENDANT
Commissioner of the Social
Security Administration


MEMORANDUM OPINION AND ORDER


BACKGROUND. Plaintiff Wynona Denise Smith ("Smith") began her attempt to obtain benefits by filing applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). Her applications were denied initially and upon reconsideration. She then requested, and received, a de novo hearing before an Administrative Law Judge ("ALJ"), who eventually issued a decision adverse to Smith. She appealed the ALJ's decision to the Appeal Council. The adverse decision was subsequently affirmed by the Appeals Council and therefore became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Smith then commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. The standard requires the Court to take into consideration "the weight of the evidence in the record and apply a balancing test to evidence which is contrary." See Heino v. Astrue, 578 F.3d 873, 878 (8th Cir. 2009) [internal quotations and citations omitted].

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, the ALJ found that Smith has not engaged in substantial gainful activity since November 8, 2006.[1] At step two, the ALJ found that Smith has the following severe impairments: "diabetes and disorders of the back, shoulder, hand, neck, and pelvic region." See Transcript at 14. At step three, the ALJ found that Smith does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The ALJ then assessed Smith's residual functional capacity and, in doing so, considered both the medical and non-medical evidence in the record, including her subjective complaints. The ALJ found that Smith has the following residual functional capacity:

---

[1]

In making that finding, the ALJ also found the following:

Although the claimant alleged an onset date of December 3, 2004, she worked after that point as confirmed in a Work Activity report completed by the Social Security Administration. Since December 27, 2003, she worked 33 hours per week at the rate of $8.25 per hour (33 hours x $8.25 equals $272.00 per week times 4,333 is 1179.00 per month, an earnings level that is clearly above the level of substantial gainful activity (SGA)). However, she reduced her hours effective November 8, 2006 to 16 per week while still earning $8.25 an hour, a level that is below the level of SGA (Exhibit 1E).

See Transcript at 14.

> ... the claimant has the residual functional capacity to perform sedentary work. She can lift/carry 10 pounds. She can stand/walk up to 4 hours and sit 4 hours or more of an 8-hour workday, with the availability of position change every 30 minutes. She is restricted from climbing ladders, ropes, or scaffolds. She is limited to occasional postural movements.

See Transcript at 15. At step four, the ALJ found that Smith cannot perform her past relevant work. At step five, the ALJ found that considering Smith's residual functional capacity, age, education, and work experience in conjunction with the testimony of vocational expert, there are jobs that exist in significant numbers in the national economy she can perform.[2] On the basis of the foregoing findings, the ALJ concluded that Smith is not disabled within the meaning of the Act.

SMITH'S ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Smith thinks not and advances what appear to be four reasons why, only one of which has merit.[3] She maintains that evidence of her depression was largely ignored by the ALJ. Although she offers little support for the assertion, the Court agrees and finds that a remand is warranted.

ANALYSIS. Smith maintains that evidence of her depression was largely ignored by

---

[2]

The ALJ specifically found that on the day of the hearing, Smith was forty-eight years old, which is defined as a younger individual, and possessed a high school education with two years of college. The ALJ credited the testimony of a vocational expert who testified that "the claimant has acquired work skills that are transferable to other jobs available in the national economy." See Transcript at 18.

[3]

The Court finds no merit to the following three assertions: 1) her residual functional capacity was not properly assessed, an assessment that allegedly failed to adequately consider her subjective complaints; 2) the ALJ erred at step five because Smith cannot perform the exertional demands of sedentary work; and 3) the Appeals Council failed to consider evidence she submitted during the course of her appeal.

the ALJ. Smith specifically maintains that the ALJ failed to consider the evaluation made by Dr. Sam Boyd ("Boyd"), a psychologist, and failed to consider her use of medication for depression.

The ALJ has an obligation to fully and fairly develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). The obligation exists even if the claimant is represented by counsel at the administrative hearing. See Boyd v. Sullivan, 960 F.2d 733 (8th Cir. 1992).[4] There is no bright line test for determining whether the Commissioner has fully and fairly developed the record; that determination is made on a case-by-case basis. See Battles v. Shalala, 36 F.3d at 45.

The record reflects that Smith has been diagnosed with depression or with symptoms associated with depression. See Transcript at 203-204, 206-207. The record also reflects that she has been diagnosed with symptoms associated with Post-Traumatic Stress Disorder ("PTSD"). See Transcript at 206-207.[5] The record reflects, however, that she has been reluctant to take medication for her symptoms, once reporting that she "does not want to become dependent on the medicine." See Transcript at 206.

In determining Smith's severe impairments and in assessing her residual functional

---

[4]

"This is so because an administrative hearing is not an adversarial proceeding. ... '[T]he goals of the [ALJ] and the advocates should be the same: that deserving claimants who apply for benefits receive justice.'" See Wilcutts v. Apfel, 143 F.3d 1134, 1137-1138 (8th Cir. 1998) [quoting Battles v. Shalala, 36 F.3d [at 44].

[5]

The symptoms associated with PTSD appear to be the result of a traumatic assault and robbery that occurred at her place of employment in March of 2004. See Transcript at 42-43. During the ordeal, she was assault by one of the assailants and struck in the back of the head with a firearm.

capacity, the ALJ made little mention of Smith's depression, her symptoms associated

with depression, or PTSD. The extent of his mention was as follows:

> … In a January 2007 visit to the St. Vincent Health Clinic East, the claimant reported that she never started Effexor samples given [her] at her last visit and said that she does not feel she is depressed, and that any feelings that she had are completely resolved.[6]
>
> …
>
> In July 2007, Sam Boyd, Ph.D., conducted a consultative psychological evaluation of the claimant. The claimant reported that she has never received any mental health treatment, either as an inpatient or outpatient. She stated that she is taking medication for diabetes but not for depression. Dr. Boyd described mild symptoms of depression, including a depressed mood and crying spells, noting that the claimant emphasized by physical issues. He assessed that the claimant's agenda during this evaluation was to convince him of the legitimacy of her physical injuries. Dr. Boyd asserted that she did not describe or exhibit symptoms that would meet the criteria for any psychiatric disorder. He offered no diagnosis and provided a Global Assessment of Functioning (GAF) of 71-80, with that being the highest in the past year. This GAF is descriptive of very mild to transient symptoms. Dr. Boyd concluded that the claimant has no significant mental impairments. …

See Transcript at 16-17. Apparently on the basis of Boyd's February of 2007 evaluation,

the ALJ did not identify Smith's depression, her symptoms associated with depression,

or PTSD as a severe impairment at step two nor does it appear that he considered those

impairments in assessing her residual functional capacity.

Although Smith offers Boyd's evaluation in support of her assertion that her mental

---

6

Effexor is apparently an anti-depressant largely prescribed to treat major depressive disorders, anxiety, and panic disorders.

impairments should have been more thoroughly considered, the evaluation actually supports the ALJ's decision to ignore the impairments. Boyd made several findings questioning the legitimacy of the impairments and found that "[she] does not appear to have significant mental impairments." <u>See</u> Transcript at 200. The record indicates that the ALJ relied on Boyd's evaluation in largely ignoring the impairments.

Notwithstanding the foregoing, though, Boyd's evaluation should not have been accorded much weight.[7] The evaluation does not contain any independent medical findings nor does it contain the results of any medical testing.  Instead, it merely contains his impressions of her mental impairments, impressions that were made on the basis of two documents and his own examination of her.  One of the documents Boyd relied upon is from a January of 2007 visit Smith made to St. Vincent Health Clinic East; the document contains the following damaging notation:

> <u>PTSD</u>: [Smith] never started the Effexor samples I gave her at [her] last visit. She says she "does not want to become dependent on the medicine" and she does not feel that she has depression. The symptoms of depression she described [at her] last visit … are completely resolved. She still has not called to establish care with a mental health specialty clinic. She says that "all I need to do is quit my job."

<u>See</u> Transcript at 206.

In September of 2007, though, or seven months after Boyd's evaluation of Smith,

---

[7]

The weight to be given a consulting physician's medical opinion is not great. It is to be given limited weight.  <u>See</u> <u>Anderson v. Heckler</u>, 738 F.2d 959 (8th Cir. 1984). It follows that the medical opinion of a psychologist is accorded even less weight.

she was seen by Dr. Patrick Kortebein ("Kortebein") at the University of Arkansas for

Medical Sciences.  See Transcript at 359-362. She presented to him complaining of back

and hip pain. In attempting to diagnosis the cause of her pain, he found evidence of

"[p]robable depression." See Transcript at 361. He additionally noted the following:

> … She is quite depressed today and that seems to be her overwhelming
> problem. There is no doubt that this traumatic assault had a significant
> psychological impact; I think she would benefit from psychological
> intervention for this. I explained to her that pain and depression often work
> synergistically such that pain problems are worse with depression and visa
> versa. I reviewed treatment for this, as well as for the low back and hip
> problems. I think she will do well with treatment of her depression, and
> involvement in a functional rehabilitation program.  We agreed to the
> following treatment:
>
> 1. Initiation of Diclofenas … and Cymbalta …[8]
>
> …
>
> The patient did state that she had been prescribed Lexapro in the past but
> she did not fill that prescription. Again, I think she would benefit most from
> psychiatric/psychological treatment for what appears to be fairly
> significant depression and psychological trauma which is compounding her
> pain problems.

See Transcript at 361-362. Kortebein saw Smith again in March of 2008. See Transcript

at 380-381. His notes from that visit reflect the following:

> … Again, I think the combination of depression and psychological trauma
> are major contributors to her ongoing chronic pain. …

---

[8] Diclofenas is apparently an anti-inflammatory largely prescribed to relieve pain. Cymbalta is largely prescribed to treat major depressive disorders, anxiety, and panic disorders.

> She will continue with her current pain medication and I have provided her with additional samples of Cymbalta …
>
> She would again benefit from a referral to psychiatry/psychology for assistance with depression and psychological trauma (? posttraumatic stress disorder), related to the initial assault back in 2004. …

See Transcript at 381.

Were Boyd's impressions of Smith's mental impairments the only evidence in the record, the ALJ could have done as he did and largely ignore the impairments.  There is, however, other evidence in the record, evidence indicating that Smith's mental impairments are more severe than found by Boyd.  Kortebein's impressions are that Smith's mental impairments are severe and, thus, are remarkably different than those offered by Boyd. Given the contrasting impressions of Smith's mental impairments, the ALJ was under an obligation to fully develop the record as to the impairments. A remand is necessary so that the ALJ can more fully develop the record as to Smith's mental impairments and determine whether they are severe at step two and determine the extent to which they impact her residual functional capacity.

CONCLUSION. On the basis of the foregoing, the Court finds that the ALJ's findings are not supported by substantial evidence on the record as a whole.  The ALJ failed to fully develop the record with regard to Smith's mental impairments. Upon remand, the ALJ shall determine whether they are severe at step two and determine the extent to which they impact her residual functional capacity. The Commissioner's final decision is

reversed, and this case is remanded for additional proceedings.   This remand is a "sentence four" remand as that phrase is defined  in 42 U.S.C. 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991).

IT IS SO ORDERED this ____13____ day of May, 2011.


_____
UNITED STATES MAGISTRATE JUDGE